**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| MARIA BROADNAX, | : | |
| | : | Case No. 3:18-cv-2393-BRM-LHG |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | **OPINION** |
| ROBERT WILKIE, SECRETARY, | : | |
| VETERANS AFFAIRS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is: (1) a Motion by Defendant Robert Wilkie ("Defendant") for Summary Judgment (ECF No. 21) and (2) a Cross-Motion by Plaintiff Maria Broadnax ("Broadnax" or "Plaintiff") for Summary Judgment. (ECF No. 24.)[1] Defendant filed an Opposition to Plaintiff's Motion. (ECF No. 27.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED.**

---

[1] Plaintiff's Cross-Motion for Summary Judgment acts both as a Summary Judgment Motion and an Opposition to Defendant's Motion for Summary Judgment. (*See* ECF No. 24-13.)

I.     PROCEDURAL AND FACTUAL BACKGROUND[2]

A.     Plaintiff Maria Broadnax

Plaintiff Maria Broadnax was born in 1978 in New Jersey and has a permanent physical disability. (ECF No. 21-3 ¶ 1.) Effective October 20, 2013, Broadnax entered federal service as a wage-grade 1, part-time Food Service Worker at the Veterans Administration ("VA") facility at Lyons, New Jersey ("Lyons"). (*Id.* ¶ 2.) Broadnax is not a veteran and is therefore not eligible for any "Veterans Preference" with respect to hiring or retention. (*Id.* ¶ 3.)

Effective April 20, 2014, Broadnax was promoted to a wage-grade 2, part-time Food Service Worker at Lyons. (*Id.* ¶ 4.) Effective March 18, 2018, Broadnax changed jobs within the VA from a part-time Food Service Worker at Lyons at an hourly wage to a full-time Medical Support Assistant at Lyons at an annual salary. (*Id.* ¶ 5.)

During periods at issue in this action, Charlotte Smith, Head Food Service Supervisor, supervised a team of five Food Service Supervisors at Lyons, including Jaqueline Hart, Michelle Ore, Wendell Phillips, Ashley Webb, and Fred Brown. (*Id.* ¶ 6.) Broadnax reported to both Hart and Webb during periods at issue. (*Id.* ¶ 7.)

Prior to commencing employment at the VA in 2013, Broadnax was involved in at least four accidents. (*Id.* ¶ 8.) Additionally, on July 25, 2014, while working at Lyons, Broadnax was "hit by a food truck onto her right ankle, fell to the floor and twisted her back." (*Id.* ¶ 10.) Because of her back injuries, the VA Occupational Health Office recommended that Broadnax be placed on temporary light duty to accommodate her injuries, and eventually recommended she be placed on permanent light duty of "no lifting, carrying, pulling, or pushing over 25 lbs" to accommodate

---

[2] Unless otherwise noted, each fact cited to in this section has been admitted by Plaintiff in her corresponding Statement of Material Facts. (*See* ECF No. 24-3.)

her injuries. (*Id.* ¶ 12.) The physical limitations that resulted in the VA recommending Broadnax for permanent light duty of "no lifting, carrying, pulling, or pushing over 25 lbs" existed when she first pursued relief for her allegations of disability discrimination and still exist today. (*Id.* ¶ 13.)

### B.   Cook Position

In Paragraph 13(A) of her Complaint, Broadnax charges the VA with disability discrimination in connection with her non-selection for a Cook position at Lyons. (ECF No. 1 ¶ 13(A).) The application period for this Cook position was December 31, 2014 to January 22, 2015. (ECF No. 21-3 ¶ 15.) The job announcement for this Cook position includes the following statements:

> **PHYSICAL EFFORT/REQUIREMENTS**: Required to perform heavy work, such as scouring and scrubbing large-size cooking utensils and pushing heavy carts and trucks in unloading, storing, and delivering supplies. Frequently lifts or moves objects weighing 18 kilograms (40 pounds) and occasionally lifts or moves objects weighing more than 60 lbs. Subject to continuous standing and walking and frequent stooping, reaching, pushing, pulling, and pending. Required to work on ladders and use powered cleaning equipment.

(*Id.* ¶ 17.)

At least 37 individuals applied for this Cook position and four applicants, including Broadnax, were deemed eligible for consideration for the Cook position as posted. (*Id.* ¶ 18.) The selection panel for the Cook position consisted of two selecting officials, Elaine Lee-Small and Sharon Reeder, overseen by a union observer. (*Id.* ¶ 19.) The selection panel used a uniform "Rating Sheet" and considered applicant resumes and supplemental information forms. (*Id.* ¶ 20.)

Three applicants, but not Broadnax, were referred by the selection panel for final consideration for the Cook position. (*Id.* ¶ 20.) The individual selected for the Cook job received a total score of (28) points on the Rating Sheet while the runners up received (18) points and (16)

points, respectively. (*Id.* ¶ 22.) The final selection of the hired individual was made by Chief Administrative Dietician, Andrea Di Bernardo. (*Id.*) Broadnax received (1) point on her Rating Sheet and, for that reason, was not referred for final consideration. (*Id.* ¶ 23.) The selectee's cover letter and resume submitted for this Cook job demonstrated considerable experience in food preparation and service, including working as lead chef at a 52-seat restaurant. (*Id.* ¶ 24.) Broadnax's resume submitted for this Cook job, by contrast, neither presented nor discussed any food preparation experience. (*Id.*) One selecting official, indicated that she was not aware that Broadnax was a person with a disability at the time of the panel process. (*Id.* ¶ 25.)

In March 2015, the VA informed Broadnax that she was not selected for the Cook position. (*Id.* ¶ 26.) Broadnax did not complaint about her non-selection for this position until March 4, 2016. (*Id.* ¶ 27.)

### C.    Housekeeping Aide Position

In Paragraph 13(B) of her Complaint, Broadnax charges the VA with disability discrimination in connection with her non-selection for a purported Housekeeping Aide Position in March 2015. (ECF No. 1 ¶ 13(B).)

Defendant contends the VA has no record of Broadnax applying for any Housekeeping Aide position in New Jersey in 2014 or 2015. (ECF No. 21-3 ¶ 30.) However, Broadnax points to an e-mail she received on May 15, 2015, which seemingly acknowledges her application for the Housekeeping Aide position, but states she was only "tentatively qualified" for the position. (ECF No. 26-4 at 2-3.)

Nevertheless, Broadnax did not complain about this purported non-selection until March 4, 2016. (ECF No. 21-3 ¶ 35.)

###### D.      Nursing Assistant Position

In Paragraph 13(C) of her Complaint, Broadnax charges the VA with disability discrimination in connection with her non-selection for a "PCS Nursing Assistant" position in January 2016. (ECF No. 1 ¶ 13(C).) The application period for this position was June 22, 2015 to July 10, 2015. (*Id.* ¶ 37.)

The Nursing Assistant position is a highly physical and physically demanding job. (*Id.* ¶ 39.) The "bare minimum" functional requirements to qualify for this position include the ability to: conduct moderate lifting and carrying of weights between 15-44 lbs.; perform straight pulling and pushing for 3-4 hours a day; engage in repeated bending for 3-4 hours a day; and engage in "rapid mental and muscular coordination simultaneously[.]" (*Id.* ¶ 40.) Additionally, the injury rate for this position is "very high." (*Id.* ¶ 41.) Any candidate selected for the position was required to "pass pre-employment examination." (*Id.* ¶ 37.)

Broadnax submitted a written application for the Nursing Assistant position on July 8, 2015. (*Id.* ¶ 42.) Of the seven applicants deemed eligible for the position, the VA selected six of them for conditional offers, including Broadnax. (*Id.* ¶ 43.) As part of the pre-hire process, the VA scheduled Broadnax for her required physical examination on December 29, 2015. (*Id.* ¶ 46.) Occupational Health Nurse Manager, Nora Krick ("Krick"), performed the examination and, after initially checking the box that Broadnax was physically qualified for the position, changed it to state that Broadnax was not physically qualified. (*Id.* ¶ 49.) After consulting with Dr. Bin Yang, VA Medical Review Officer, Krick ultimately determined that, based on Broadnax's injuries and capabilities, she could not safely perform the duties of the position. (*Id.* ¶ 50.)

On January 4, 2016, the VA informed Broadnax she did not clear the pre-hire process for the Nursing Assistant Position. (*Id.* ¶ 54.) Broadnax did not complain about her purported non-

selection for this position until March 4, 2016. (*Id.* ¶ 56.)

### E.   Late-2015 Applications for Food Service Worker Roles

Broadnax applied for a series of three Food Service Worker openings at Lyons in October and November of 2015 and was not selected for any of them. (*Id.* ¶ 57.) Specifically, Broadnax applied for: (1) the opportunity in or around October 2015 to convert from a part-time to a full-time Food Service Worker as the result of a staffing shortage; (2) a part-time Food Service Worker position open for applications from October 28, 2015 to November 19, 2015; and (3) a full-time Food Service Worker position open for applications from October 7, 2015 to October 29, 2015. (*Id.* ¶ 58.)

At the time Broadnax made these applications, she had just completed a performance appraisal period for the federal fiscal year October 1, 2014 to September 30, 2015 for her work as a wage-grade 2, part-time Food Service Worker at Lyons. (*Id.* ¶ 60.) Two of Broadnax's supervisors testified regarding her shortcomings, saying that Broadnax was "late for work just about every day" and "would fall behind" on her work often. (*Id.* ¶ 64-65.)

### F.   Late-2015 Conversion of Part-Timers to Full-Time

In Paragraph 13(G) of her Complaint, Broadnax charges the VA with disability discrimination in connection with her non-selection for "full-time employment" in "November or December 2015." (ECF No. 1 ¶ 13(G).)

In the Fall of 2015, the Food Service was short-staffed and received approval to convert several part-time Food Service Workers at wage-grade 1 and wage-grade 2 to full-time. (ECF No. 21-3 ¶ 67.) Supervisors select which part-time workers make the switch to full-time based on worker reliability, timeliness, work ethic, and other characteristics. (*Id.* ¶ 69.)

In October 2015, twelve part-time workers, including Broadnax, indicated their interest in

conversion to full-time work. (*Id.* ¶ 70.) Overall, every worker other than Broadnax that expressed interest in conversion was converted to full-time work. (*Id.* ¶¶ 73-75.) In making the selection, the Food Service Supervisors relied, at least in part, on each selectee's Performance Appraisal forms for the period immediately preceding the selection process. (*See id.* ¶ 77.) Broadnax did not complain about her non-selection for this conversion until August 2016. (*Id.* ¶ 84.)

### G.   Part-Time Food Service Worker Position

In Paragraph 13(D) of her Complaint, Broadnax charges the VA with disability discrimination in connection with her non-selection for a wage-grade 4, part-time Food Service Worker position at Lyons on February 5, 2016. (ECF No. 1 ¶ 13(D).) The application period for this position was October 28, 2015 to November 19, 2015. (ECF No. 21-3 ¶ 86.) The job announcement for the position included the following:

> **PHYSICAL EFFORT/REQUIREMENTS**: Required to perform heavy work, such as scouring and scrubbing large-size cooking utensils and pushing heavy carts and trucks in unloading, storing, and delivering supplies. Subject to continuous standing and walking and frequent stooping, reaching, pushing, pulling, and pending. Required to work on ladders and use powered cleaning equipment. Frequently lift or move objects weighing 18 kilograms (40 pounds) and occasionally lift or move objects weighing more than 60 lbs.

(*Id.* ¶ 88.)

Seven individuals, including Broadnax, applied for the position. (*Id.* ¶ 90.) The selection panel, which included Jennifer Murray and Robert Walker, used a uniform "Rating Sheet" to score the applicants. (*Id.* ¶¶ 92-93.) While Broadnax was deemed qualified for the position, she received only 18 points on her rating sheet while the other candidates all received totals at or above 25 points. (*Id.* ¶ 94.) As a result, Broadnax was not selected for the position. (*Id.* ¶ 95.)

### H.      Full-Time Food Service Worker Position

In Paragraph 13(E) of her Complaint, Broadnax charges the VA with disability discrimination in connection with her non-selection for a full-time Food Service Worker position on March 4, 2016. (ECF No. 1 ¶ 13(E).) The application period for this position was October 7, 2015 to October 29, 2015. (ECF No. 21-3 ¶ 100.) The job announcement for the position stated:

> **PHYSICAL EFFORT/REQUIREMENTS:** Required to perform heavy work, such as scouring and scrubbing large-size cooking utensils and pushing heavy carts and trucks in unloading, storing, and delivering supplies. Subject to continuous standing and walking and frequent stooping, reaching, pushing, pulling, and pending. Required to work on ladders and use powered cleaning equipment. Frequently lift or move objects weighing 18 kilograms (40 pounds) and occasionally lift or move objects weighing more than 60 lbs.

(*Id.* ¶ 102.)

More than 125 individuals, including Broadnax, applied for this position. (*Id.* ¶ 104.) The selection panel—consisting of Roberta Woodard, Kamora Mills, and Robert Walker—once again used a uniform rating sheet to score the 18 applicants they reviewed. (*Id.* ¶ 107.) The applicants' scores ranged from 1 to 28, with Broadnax receiving a score of 14, the second lowest of any applicant scored. (*Id.* ¶ 109.) Five applicants, not including Broadnax, were eventually selected for the position, and each applicant scored between 19 and 28 on the ratings sheet. (*Id.* ¶¶ 114-15.)

### I.      Alleged Harassment/Hostile Work Environment

Broadnax alleges she was subject to a hostile work environment based on her disability. (ECF No. 1 ¶¶ 1, 2, 17-18.) Specifically, she alleges Head Food Service Supervisor Charlotte Smith ("Smith") made at least two statements to Broadnax that Broadnax perceived as discriminatory. (*Id.* ¶¶ 12, 13, 15, 16.) First, Broadnax alleges Smith said to her, "When are you going to get off light duty? Don't you want to move up?" (*Id.* ¶ 13(H).) Additionally, Broadnax alleged that, in late 2015, Smith "told everyone that she 'was moving them up, but not moving up

any handicapped employees' at that time." (ECF No. 20-27 at 2.) Finally, Broadnax alleges that, on March 4, 2016, Smith told Broadnax she would need to get off light duty status before she could be promoted to full-time status. (ECF No. 1 ¶ 13(F).) Defendant denies each of these allegations.

### J.   Procedural History

Broadnax made an initial contact with an Equal Employment Opportunity ("EEO") counselor at the VA on March 14, 2016, where she lodged six claims for the non-selections for the Cook position, the Housekeeping Aide position, the Nursing Assistant position, the full-time wage-grade 3 Food Service Worker position, and the part-time wage-grade 4 Food Service Worker position. (ECF No. 21-3 ¶ 139.)

The VA received a formal written EEO complaint from Broadnax on April 27, 2016. (*Id.* ¶ 142.) Following this, the VA EEO decided to investigate Broadnax's claims as possible disability discrimination. (*Id.* ¶ 144.) Following an investigation, the VA EEO issued a written report on January 6, 2017, which they then referred to the VA Office of Employment Discrimination. (*Id.* ¶¶ 149-50.) On December 8, 2017, the VA Office of Employment Discrimination issued the "Department's Final Agency Decision or Final Order," denying all of Broadnax's employment discrimination complaints. (*Id.* ¶ 153.)

On February 20, 2018, Broadnax filed her Complaint with this Court. (ECF No. 1.) On July 9, 2018, Defendant filed an Answer to the Complaint. (ECF No. 8.) Discovery was conducted and eventually ended on December 20, 2019. (ECF No. 16.) On February 21, 2020, Defendant filed a Motion for Summary Judgment on all claims. (ECF No. 21.) On March 23, 2020, Broadnax filed a Cross-Motion for Summary Judgment on all claims. (ECF No. 24.) On April 13, 2020, Defendant filed an Opposition to Broadnax's Cross-Motion. (ECF No. 27.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553

(1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

III.    DECISION

A.      Disability Discrimination Claims prior to January 19, 2016[3]

As an initial matter, Defendant contends Broadnax's claims for disability discrimination prior to January 19, 2016 should be dismissed as untimely. (ECF No. 21-4 at 9.)

Prior to bringing employment discrimination claims in court, a federal employee must exhaust all administrative remedies. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. pt. 1614. To exhaust administrative remedies, a federal employee must: (1) make contact with an EEO counselor within forty-five days of the alleged discriminatory action; (2) file a formal complaint with the EEOC within fifteen days from receipt of the agency's final decision; and then (3) appeal the agency's final decision to the EEOC or file a civil action in federal district court within ninety days of the agency's decision. *See Marley v. Donohue*, 133 F. Supp. 3d 706, 715-16 (D.N.J. 2015); *see also* C.F.R. § 1614.105(a)(1). Dismissal of employment discrimination claims is appropriate where an employee has failed to exhaust these administrative remedies. *Marley*, 133 F. Supp. 3d at 716 n.16; *see also Grant v. Sec'y, Dep't of Homeland Secur.*, 698 F. App'x 697, 700 (3d Cir. 2017) (finding that the "45 day time limit operates akin to a statute of limitations").

Broadnax first sought EEO counseling on March 4, 2016 (ECF No. 21-3 ¶ 139), setting the cut-off date for claims at January 19, 2016. Broadnax does not dispute this. (ECF No. 24-4 ¶ 139.) The only non-selection claims that Broadnax alleges occurred after this cut-off date are the claims on February 5, 2016 for a part-time Food Service Worker job and on March 4, 2016 for a full-time Food Service Worker job. (*See* ECF No. 1 ¶¶ 13(D)-(E).) Broadnax even acknowledges her remaining non-selection claims do not fall "within the absolute time frame of 45 days of each

---

[3] These claims include Broadnax's non-selection for the following positions: (1) a Cook position on March 13, 2015; (2) a Housekeeping Aide position on May 15, 2015; (3) a Nursing Assistant Position on January 4, 2016. (*See* ECF No. 1 §§13(A)-(C).)

adverse employment practice." (ECF No. 24-13 at 22.) As such, Broadnax's remaining non-selection claims fall outside the cut-off date and are therefore untimely.

Nevertheless, Broadnax urges this Court to apply the doctrine of equitable tolling to the untimely claims and allow them to proceed. (ECF No. 24-13 at 21-22.)

Equitable tolling is a judge-made rule that "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Santos v. United States*, 559 F.3d 189, 198 (3d Cir. 2009) (citing *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). Normally, there are three scenarios where equitable tolling may be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* (quoting *Hedges v. United*, 404 F.3d 744, 751 (3d Cir. 2005)); *see also Santos*, 559 F.3d at 197; *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

Broadnax contends this Court should apply equitable tolling to the remaining non-selection claims because Defendant actively misled her. (ECF No. 24-13 at 23.) However, she has not made allegations sufficient to justify this Court's use of equitable tolling.

Indeed, as Broadnax concedes, equitable tolling is an "extraordinary" remedy to be used "only sparingly." *Santos*, 559 F.3d at 197. Here, Broadnax claims Defendant "actively misled" her in each of the non-selection instances by "conceal[ing] its discriminatory motives, conduct and action by deceptively characterizing its basis for not selecting plaintiff' for various positions. (ECF No. 24-13 at 22-23.) Specifically, Broadnax points to a deposition excerpt where VA Occupational Health Physician Dr. Bin Yang explains his role is to determine an individual's medical conditions

13

and recommend limitations to address those conditions. (ECF No. 24-13 at 18.) Referencing Dr. Yang's deposition, Broadnax offers the following speculation about Defendant's selection process:

> [P]laintiff was not aware that no employee with a permanent light duty restriction / limitation was promoted from part-time to fulltime in excess of thirty years was unknown to plaintiff when she was designated as an employee restricted and/or limited to permanent light duty. To further conceal this statistic from plaintiff, defendant would engage in the promotion and advance of female employees who were or were known to have been placed on light duty while pregnant. However, such pregnant women were not classified as having been placed on "permanent" light duty.

(*Id.*)

This, however, amounts to conclusory speculation that is unsupported by the record. Broadnax does not explain how Dr. Yang's process "actively misled" her, nor does she cite anywhere in the record that Dr. Yang and VA Human Resources barred any and all advancement by individuals placed on permanent light duty for thirty years. As such, Broadnax has failed to demonstrate Defendant actively mislead her. Therefore, this Court finds no grounds to apply equitable tolling to the non-selection claims prior to January 19, 2016.

Because there is no genuine issue of material fact that Broadnax did not seek EEO counseling until March 4, 2016, it is clear Broadnax did not exhaust her administrative remedies for the non-selection claims that occurred prior to January 19, 2016. Further, because Broadnax has not demonstrated Defendants engaged in a scheme to deceive her, the Court need not apply equitable tolling and Broadnax is barred from pursuing her non-selection claims prior to January 19, 2016 as a matter of law. *See Grant*, 698 F. App'x at 700.

Accordingly, Defendant's Motion for Summary Judgment on the non-selection claims prior to January 19, 2016 is **GRANTED** and Plaintiff's Motion for Summary Judgment on these claims is **DENIED**.

### B.    Disability Discrimination Claims After January 19, 2016

As this Court has granted Summary Judgment on all non-selection claims prior to January 19, 2016, it must now analyze the remaining non-selection claims. These claims include: (1) a wage-grade 4 part-time Food Service Worker position at Lyons; and (2) a full-time Food Service Worker position at Lyons. (ECF No. 1 §¶ 13(D)-(E).) The Court will address each claim in turn.

### 1.    Part-Time Food Service Worker Position

Broadnax alleges Defendant engaged in disability discrimination in connection with her non-selection for a wage-grade 4, part-time Food Service Worker position at Lyons. (ECF No. 1 § 13(D).) Defendant contends he is entitled to summary judgment on this claim because Broadnax cannot make out a *prima facie* case that she was qualified for the role or that there was a discriminatory animus. (ECF No. 21-4 at 32.) Alternatively, Defendant claims he is entitled to summary judgment on this claim because the record demonstrates an independent panel found Broadnax to be unqualified for the position. (*Id.* at 33.)

Conversely, Broadnax contends she is entitled to summary judgment on this claim because she met the essential functions for the position. (ECF No. 24-13 at 15.)

The Rehabilitation Act of 1973 ("RA") prohibits federal employers and employers who receive federal funding from discriminating against disabled individuals in matters of hiring, placement or advancement. 29 U.S.C. § 701 *et seq.*; *see Shiring v. Runyon*, 90 F.3d 827, 830–31 (3d Cir. 1996). Generally, courts analyze RA claims using the same standards that apply to claims arising under Title I of the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 791(g) ("The

standards used to determine whether . . . a complaint alleging non-affirmative action employment discrimination under this section shall be the standards applied under title I of the [ADA].&#8221;). To succeed on a disability discrimination claim pursuant to the RA, a plaintiff &#8220;must make a prima facie showing that reasonable accommodation is possible&#8221; by demonstrating: (1) that she has a disability; (2) that she is otherwise qualified to perform the essential functions of the job with or without accommodation; and (3) that she was nonetheless terminated or otherwise prevented from performing the job. *See Shiring*, 90 F.3d at 831.

Defendants do not dispute Broadnax satisfies the first and third prongs of this test. (*See generally* ECF No. 21-4.) As such, the Court must determine whether Broadnax was otherwise qualified to perform the essential functions of the job.

&#8220;[T]he burden is on the employee to prove that she is &#8216;an otherwise qualified individual.&#8217;&#8221; *Shiring*, 90 F.3d at 832.

> A two-part test is used to determine whether someone is a qualified individual with a disability. First, a court must consider whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. Second, the court must consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.

*Ozlek v. Potter*, 29 F. App&#8217;x 417, 420 (3d Cir. 2007) (citing *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

Because neither party seems to be contesting that Broadnax possessed the necessary prerequisites for her employment, the Court will only consider whether Broadnax has presented a sufficient evidentiary basis for a reasonable jury to find for her on the issue of her ability to perform the essential functions of his job with or without reasonable accommodation. *See id.* Broadnax fails to produce such evidence.

16

In her Motion, Broadnax contends—without any citation to case law—that:

> [D]efendant's failure to engage plaintiff in a good faith interactive process in connection with assessing the availability or lack of availability of a reasonable accommodation forecloses [D]efendant from arguing that plaintiff could not perform the essential functions of the assorted positions without reasonable accommodation.

(ECF No. 24-13 at 15.)

This is a misstatement of law. In order for a Court to engage in an inquiry into whether or not an employer has engaged in an "interactive process," a plaintiff must first demonstrate they are qualified. *Ozlek*, 259 F. App'x at 421. Plaintiff has failed to make this showing.

The wage-grade 4 job involved "*inter alia*, delivering meals to wards and replacing bulk food items." (ECF No. 21-3 ¶ 88.) The job announcement for the position included certain physical requirements, which stated:

> **PHYSICAL EFFORT/REQUIREMENTS**: Required to perform heavy work, such as scouring and scrubbing large-size cooking utensils and pushing heavy carts and trucks in unloading, storing, and delivering supplies. Subject to continuous standing and walking and frequent stooping, reaching, pushing, pulling, and pending. Required to work on ladders and use powered cleaning equipment. Frequently lift or move objects weighing 18 kilograms (40 pounds) and occasionally lift or move objects weighing more than 60 lbs.

(*Id.*)

At the time Broadnax applied for the wage-grade 4 job, she was unable to lift, carry, or push over 25 pounds. (*See* ECF No. 21-3 ¶¶ 12-13.) Broadnax does not dispute this. (ECF No. 24-3 ¶¶ 12-13.) As such, her failure to provide evidence that she was able to perform the essential functions of the job is fatal to her claim. *See Celotex*, 477 U.S. at 322-23 ("There can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.") Because Broadnax was not able to perform the tasks required by the position and does not raise a genuine

17

dispute of material fact as to whether the physical requirements were essential functions of the position, the Court may properly enter summary judgment in favor of Defendant. *See Fowler v. AT&T Servs.*, No. 18-667, 2020 U.S. Dist. LEXIS 94751, at *19 (D.N.J. May 31, 2020) (granting summary judgment in favor of defendant employer where plaintiff employee failed to demonstrate that they could perform the essential functions of the position); *see also Rich v. Verizon N.J. Inc.*, No. 16-1895, 2017 U.S. Dist. LEXIS 203131, at *48 (D.N.J. Dec. 11, 2017) (same); *Lincoln v. Momentum Sys.*, 86 F. Supp. 2d 421, 427 (D.N.J. 2000) (same).

Accordingly, for the reasons stated above, Defendant's Motion for Summary Judgment on this claim is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED.**

### 2.    Full-time Food Service Worker Position

Broadnax alleges Defendant engaged in disability discrimination in connection with her non-selection for a wage-grade 3, full-time Food Service Worker position at Lyons. (ECF No. 1 § 13(E).) As with the wage-grade 4 position, Defendant contends he is entitled to summary judgment on this claim because Broadnax cannot make out a *prima facie* case that she was qualified for the role or that there was a discriminatory animus. (ECF No. 21-4 at 36.)

Here, as with the non-selection claim for the wage-grade 4 position, Broadnax fails to make a *prima facie* showing that she could meet the essential functions of the job. Once again, Broadnax misstates the law and contends she is not required to make such a showing because Defendant failed to engage in an interactive process. (ECF No. 24-13 at 15.) Further, she points to no evidence in the record to demonstrate the existence of a genuine dispute of material fact that she could perform the essential functions of the position. Notably, the wage-grade 3 job announcement included the following requirements:

**PHYSICAL EFFORT/REQUIREMENTS:** Required to perform heavy work, such as scouring and scrubbing large-size cooking

> utensils and pushing heavy carts and trucks in unloading, storing,
> and delivering supplies. Subject to continuous standing and walking
> and frequent stooping, reaching, pushing, pulling, and pending.
> Required to work on ladders and use powered cleaning equipment.
> Frequently lift or move objects weighing 18 kilograms (40 pounds)
> and occasionally lift or move objects weighing more than 60 lbs.

(ECF No. 21-3 ¶ 102.)

Again, Broadnax does not dispute she, at the time she applied for the wage-grade 3 position, she was unable to lift, carry, or push over 25 pounds. (*See* ECF No. 24-3 ¶¶ 12-13.) Because Broadnax was not able to perform the tasks required by the position and does not raise a genuine dispute of material fact as to whether the physical requirements were essential functions of the position, the Court may properly enter summary judgment in favor of Defendant. *See Rich*, 2017 U.S. Dist. LEXIS 203131, at *52 (granting summary judgment in favor of employer defendant where the court found no genuine dispute of material fact that employee plaintiff could not perform the physical requirements of the position).

Accordingly, for the reasons stated above, Defendant's Motion for Summary Judgment on this claim is **GRANTED** and Plaintiff's Motion for Summary Judgment on this claim is **DENIED.**

### C.    Hostile Work Environment Claim

In addition to her non-selection claims, Broadnax asserts Defendant created a hostile work environment based on her disability. (ECF No. 1 ¶¶ 1, 2, 17-18.) Defendant contends he is entitled to summary judgment on this claim because the incidents Broadnax describes do not rise to the level of a hostile work environment claim. (ECF No. 21-4 at 42.)

To succeed on summary judgment for a hostile work environment claim under the ADA, Broadnax needs to show: (1) she is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the

conditions of her employment and to create an abusive working environment; and 5) that Defendant knew or should have known of the harassment and failed to take prompt effective remedial action. *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998); *Vendetta v. Bell Atlantic Corp.*, No. Civ. A. 97-4838, 1998 WL 575111, at *9 (E.D. Pa. Sep. 8, 1998)).

To prove a hostile work environment, the environment must be shown to be objectively hostile or abusive, and the plaintiff must have perceived it as a hostile or abusive environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). Broadnax need not prove she suffered injury or that her psychological well-being was seriously affected. *See id.* She does, however, need to show the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Id.* at 21 (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). To judge whether such an environment is hostile or abusive, this Court must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

First, in her brief, Broadnax spends much of her argument regarding her hostile work environment claim discussing the timeliness of her claim. (*See* ECF No. 24-13 at 24-27.) Because Defendant has not challenged the timeliness of this claim, the Court declines to engage in this analysis. Instead, the Court will proceed with an analysis of the merits of Broadnax's hostile work environment claim.

While Broadnax's brief does not include or directly reference any discrete instance of hostile work environment, Broadnax does include certain allegations in her statement of material facts which accompany her brief. In citing those same instances, Defendant contends these events,

taken together, do not create a cognizable hostile work environment claim. These instances include:

- In or around November or December 2015, Smith said to Broadnax, "When are you going to get off light duty? Don't you want to move up?" (ECF No. 1 ¶ 13(H).)

- In September 2016, during the EEO investigation, Broadnax told the investigator that Smith "told everyone that she 'was moving them up, but not moving up any handicapped employees' at that time." (ECF No. 20-27 at 2.)

- During the EEO investigation, Broadnax testified that Hart directed male Food Service Workers to not assist Broadnax with disposal of garbage that was her responsibility to remove. (ECF No. 20-28 at 19:17-25.)

- In late-2015, fellow part-time Food Service Workers made jokes about Broadnax's light duty status, but such conduct stopped after conversion of some part-timers to full time. (ECF No. 20-28 at 189:7-11.)

- On March 4, 2016, Smith stated that Broadnax needed to get off light duty before she could be promoted to full-time status. (ECF No. 1 ¶ 13(F).)

Importantly, the above instances are simply Broadnax's allegations, and Defendant disputes these allegations. (*See* ECF No. 21-3 at 21.) However, even taking these allegations as true, Broadnax has failed to satisfy the elements of her hostile work environment claim.

Under the totality of the circumstances test, it is clear these allegations—considered both individually and together—fall far short of meeting the *Harris* standard. First, Broadnax did not make any contemporaneous statements or complaints to supervisors regarding the alleged mistreatment or discrimination. (ECF No. 21-3 ¶¶ 131-32.) As such, there is no way Defendant knew or should have known of the alleged harassment. Further, Broadnax makes no allegations

that the conditions of her employment were so severe as to create an abusive working environment. Finally, while undoubtedly unpleasant, the comments from Broadnax's co-workers are insufficient to demonstrate a hostile work environment. *See Hatch v. Franklin Cnty*, 755 F. App'x 194, 202 (3d Cir. 2018) (concluding that occasional comments by supervisors and coworkers "do not create a severe or pervasive hostile work environment"); *see also Busch v. Oswayo Sch. Dist.*, No. 15-239, 2016 WL 5394085, at *10 (W.D. Pa. Sep. 27, 2016) (dismissing a hostile work environment claim on grounds that allegations of disciplinary comments by a supervisor and jokes by co-workers "are precisely the type of 'offhand comments' and 'isolated incidents' that courts have routinely held to be insufficiently hostile").

Overall, Broadnax's allegations do not pass muster under *Harris* because she has not demonstrated that (1) her environment was objectively hostile or abusive, (2) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment, or (3) that Defendant knew or should have known of the harassment and failed to take prompt effective remedial action. Therefore, a reasonable factfinder could not find on this record that the challenged conduct was pervasive or frequent as a matter of law. Further, nothing in the record demonstrates that the asserted harassment was abusive or severe under the totality of the circumstances. As such, summary judgment may be properly entered in favor of Defendant.

Accordingly, Broadnax's Motion for Summary Judgment on the hostile work environment claim is **DENIED** and Defendant's Motion for Summary Judgment on the hostile work environment claim is **GRANTED.**

### D. Retaliation Claim

Finally, Broadnax alleges she was subject to retaliation "in response to the complaints that she filed with [Defendant]." (ECF No. 1 ¶ 2.)

To establish a prima facie case of retaliation, a plaintiff must show:  (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Williams v. Phila Hous. Auth. Police Dep't*, 380 F.3d 751-59 (3d Cir. 2004).

Broadnax fails to satisfy any of the above elements sufficient to create a cognizable claim for retaliation. First, insofar as Broadnax contends the non-selection for various positions amounted to retaliation by Defendant, this argument is unavailing. Broadnax sought EEO counseling—which is considered the "protected employee activity" in this case—on March 4, 2016. (ECF No. 21-3 ¶ 136.) However, even assuming the non-selection for different positions was an "adverse action" by Defendant, those actions occurred well before the "protected activity." (*See generally* ECF No. 21-3.) As such, these non-selections cannot make up the basis for her retaliation claim.

Because Broadnax has failed to proffer any evidence of retaliation outside of this, no reasonable jury could conclude that Broadnax has established a prima facie case of retaliation.

Accordingly, Broadnax's Motion for Summary Judgment on the retaliation claim is **DENIED** and Defendant's Motion for Summary Judgment on the retaliation claim is **GRANTED.**

**IV.**    **CONCLUSION**

For the reasons set forth above, Broadnax's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED.**


**Date: September 30, 2020**                    */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**